RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA
DATE _10-6-05_
BY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| EVELYN MOREAU | DOCKET NO. 04-CV-2433 |
| VERSUS | JUDGE DRELL |
| COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

This case comes before the Court for a review of the final decision of the Commissioner of Social Security ("Commissioner"), denying EVELYN MOREAU Supplemental Security Income Benefits ("SSI") under the Social Security Act ("SSA"). 42 U.S.C. § 1381(a). The issue to be decided is whether substantial evidence in the record supports the finding of the Administrative Law Judge ("ALJ") that Moreau is not disabled and thus not entitled to SSI benefits.

Moreau, who was born in 1959, has a seventh grade education, and has past relevant work experience as a janitor and nursing assistant, filed an application for SSI in July 2001. Moreau alleged a disability onset date of January 30, 2001 (Tr. 85) due to acute myocardial infarction with stent replacement (Tr. 98). She also claims that she suffers from adjustment disorder with depressed mood. (Doc. #6, p.1.) Disability Determination Services (DDS) denied Moreau's claim, and a request for hearing was timely made. A hearing was conducted on September 6, 2002, at which Moreau, who was represented by counsel, appeared and testified along with Thomas LaFosse, a Vocation Expert. (Tr. 25-62.) The

ALJ issued a decision unfavorable to the claimant on October 14, 2002, and the Appeals Council denied her request for review. Moreau filed the instant lawsuit on November 30, 2004.

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. 1382(a). To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th C. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162

(5th Cir. 1994), citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. <u>Singletary v. Bowen</u>, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1302 (5th Cir. 1987); <u>Dellolio v. Heckler</u>, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. <u>Allen v. Schweiker</u>, 642 F.2d 799, 801 (5th Cir. 1981). Also, <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. <u>Dellolio</u>, 705 F.2d at 125. But, to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." <u>Johnson v. Bowen</u>, 864 F.2d 340 (5th Cir. 1988); <u>Dellolio</u>, 705 F.2d at 125.

## Issues

Moreau raises the following issues for review:

(1) Whether the ALJ failed to follow internal procedures resulting in a finding at Step 5 of the Evaluation Process that was not supported by substantial evidence.

## Factual Background

Moreau was born in 1959 and has a seventh grade education. She filed for SSI in July 2001. Moreau had a history of hypertension for which she took medication. She was admitted to Louisiana State University Medical Center (LSUMC) in Shreveport, Louisiana in January 2001 with substernal chest pain with radiation into the left jaw and left axilla, some diaphoresis, and fluttering in her chest. (R. 131.) Her pain was relieved with nitroglycerin, Lidocaine, and Xanax. (R. 144.) Moreau was discharged in stable condition, with a diagnosis of coronary artery disease. (Tr. 146.) She was instructed to follow up with the cardiology clinic in six weeks. (R. 147.)

Moreau was treated in October 2001 for ureterolithiasis (R. 176) at Natchez Regional Medical Center. A pyelogram revealed no obstruction or uropathy. No limitations have been placed on her activities as a result of those symptoms, and there has been no ongoing treatment.

Moreau was evaluated on December 4, 2001, by a clinical psychologist, Richard Wakefield, Ph.D., at the request of Moreau's

attorney. (R. 187-189.) Moreau appeared concerned about her physical condition. She denied previous treatment for mental health issues prior to October 2001 when she was prescribed Remeron for sleep and depression. (R. 187.) Her depressive symptoms were variable and reactive to situations. Moreau reported to Dr. Wakefield that she stays home to care for a thirteen-year-old and an eight-year-old. She watches television, completes basic self-care skills, does household chores, and takes brief walks. (R. 188.) Upon examination, which was "unremarkable," Moreau's affect was appropriate and her mood was somewhat depressed. (R. 188.) Insight, judgment, and impulse control were grossly within normal limits, and Moreau's attention, concentration, and general memory functioning did not appear to show pervasive difficulties. (R. 188.) A WAIS-III test was administered, and the doctor noted that the results were a slight underestimate of Moreau's true capacity. Results placed Moreau between the borderline and low average range of intellectual functioning. Dr. Wakefield found that Moreau's depressive symptoms were best characterized as Adjustment Disorder with Depressed Mood, primarily in response to her physical condition and losing her employment. (R. 189.)

Dr. Wakefield opined that Moreau's "attention, concentration, persistence, and pace might be periodically impacted to some degree by her depressive involvement," although the degree would be "variable." (R. 189.) Wakefield stated that any limitations due

to Moreau's intellectual functioning were not sufficient to preclude any gainful employment or interfere with her capacity to understand, remember and carry out most basic and semi-complex instructions. (R. 189.) The psychologist opined that Moreau had the necessary social skills to establish and maintain appropriate working relationships with others. (R. 189.)

Issue No. 1: Whether the ALJ failed to follow internal procedures resulting in a finding at Step 5 of the Evaluation Process that was not supported by substantial evidence.

The ALJ determined that Moreau had severe impairments of coronary artery disease and adjustment disorder with depressed mood, but those impairments did not meet or medically equal impairments listed in Appendix 1, Subpart P, Regulations No.4. The ALJ concluded that Moreau had the residual functional capacity for light work activity with moderate limitations in attention, concentration, persistence, pace, and working around the general public. (R. 20.) The VE testified that such a person could perform the jobs of hand-packer or packager, a light duty cleaner or vehicle washer, a parking lot attendant, or production inspector, checker or examiner.

Moreau does not challenge the RFC as determined by the ALJ. Rather, she argues that the ALJ's definition of "moderate" that was provided to the vocational expert ("VE") was not proper as it "was *imported* from forms that were NOT part of the record." (Doc. #6, p.5.) The ALJ instructed the VE that, by "moderate," he meant that

6

the individual was still able to function in that area, and that "marked" meant there was a serious limitation in the area. The Social Security Regulations do not define "moderate." <u>Martinez v. Barnhart</u>, 2003 U.S. Dist. LEXIS 20822 (WDTX 2003). Listing 12.00, "Mental Disorders," provides: "here we use 'marked' as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, so long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. pt. 404, subpt. P, app. 1, listing 12.00C." <u>Martinez v. Barnhart</u>, 2003 U.S. Dist. LEXIS 20822, n.43 (WDTX 2003). Thus, a moderate limitation is less than a marked limitation, which seriously interferes with functioning. See <u>id.</u>

In this matter, Dr. Wakefield opined that Moreau's insight, judgment, and impulse control were grossly within normal limits, and her attention, concentration, and general memory functioning did not appear to show pervasive difficulties. (R. 188.) Dr. Wakefield found that Moreau's "attention, concentration, persistence, and pace might be periodically impacted to some degree by her depressive involvement," although the degree would be "variable." (R. 189.) That opinion is consistent with the ALJ's assessment and definition.

The ALJ's hypothetical question to the VE must reasonably incorporate all disabilities of the claimant *recognized by the ALJ*, and the claimant or her representative must be afforded the opportunity to correct perceived deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions. Boyd v. Apfel, 239 F.3d 698, 706-707 (5th Cir. 2001), citing Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994). The undersigned finds that the hypothetical posed to the VE reasonably incorporates all recognized disabilities. Also, in this case, Moreau was represented by counsel at the hearing, who had the opportunity to question the VE and correct any deficiencies. The representative did not discuss moderate limitations or what he perceived as the proper definition of "moderate." (R. 59-60.)

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the decision of the Commissioner be AFFIRMED and that Moreau's appeal be DENIED and DISMISSED WITHOUT PREJUDICE.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another

8

party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 4th day of October, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE